IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LAWRENCE NORTHERN,

    Plaintiff,

v.                                        Case No. 19-CV-120

ANTHONY HENTZ, et al.,

    Defendants.

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RELATING TO PLAINTIFF'S COMPLAINTS OF PAIN

The totality of care provided to Northern addressed his underlying condition and his complaints of symptoms of headaches and chest pain when he raised those complaints as being more frequent and more severe beginning in 2018. The defendants were not deliberately indifferent to symptoms he reported and he received appropriate treatment. Defendants request that the Court grant their motion for summary judgment relating to Northern's claims regarding treatment for his symptoms of chest pain and headaches.

### SUPPLEMENTAL STATEMENT OF MATERIAL FACTS

Defendants incorporate by reference the supplemental statement of material facts filed herewith. Specific facts will also be discussed below.

**ARGUMENT**

The totality of care Northern received included appropriate treatment for his symptoms of headaches and chest pain when he brought it to the attention of the Defendants.

## I. Defendants were not deliberately indifferent to a serious medical need during the July 2017 episode.

In July 2017, Northern thought he was having an emergency cardiac event that, fortunately, was not the case. When Northern was seen in HSU by Nurse Kostahyrz on July 19, 2017, the nurse stated that Northern's pain was reproducible with deep breaths and palpation which is indicative of chest wall pain. Chest wall pain is not a cardiac event. It is also not a symptom associated with hypertension. (Suppl. DPFOF ¶ 2.)

Chest wall pain is a muscular-type strain, caused, for example, a person lifting something heavy over his head or otherwise straining the muscle. This discomfort could be treated by over-the-counter medication such as acetaminophen or ibuprofen available to Northern through the canteen. (Suppl. DPFOF ¶ 3.) There is no documentation in the medical records that Northern complained that the pain he reported he experienced on July 19, 2017 did not resolve later that day. (Suppl. DPFOF ¶ 6.)

Because Northern reported more frequent chest pain to the nurse, Tidquist increased Northern's Amlodipine. (Suppl. DPFOF ¶ 4.) Tidquist increased the medication in response to Northern's concerns and because of his elevated blood

pressure. While Amlodipine is not prescribed specifically to address pain, bringing Northern's blood pressure under better control will also typically alleviate other symptoms – such as headaches or complaints of chest pain. (Suppl. DPFOF ¶ 5.)

While Northern was worried he was having a serious medical cardiac event, he was not. Northern's experience of a short duration muscle-type strain treatable by over-the-counter medication is not a serious medical need that required defendants to provide him pain relief. Nor were defendants deliberately indifferent to the episode. The nurse relayed the information to Tidquist who did not ignore the episode, but adjusted his blood pressure medication with the goal of addressing any related symptoms he may experience. Medication to control blood pressure should also alleviate any possible symptoms, such as headaches or chest pain, associated with uncontrolled hypertension. (Supplemental DPFOF (Suppl. DPFOF ¶ 1.)

**II. Defendants were not deliberately indifferent to Northern's symptoms.**

Northern did not suffer unrelenting chest pain and headaches throughout the 2016 to 2018 time period primarily at issue in this case. Northern's steady complaints of experiencing more severe headaches began in 2018. The chronology shows that he received acetaminophen and was also offered a nursing visit by Hentz that Northern did not then request.

Beginning in early 2018, in response to Northern stating to various nurses that he had increasingly severe headaches and wanted to be seen regarding his hypertension. On February 22, 2018, Northern submitted a Health Service Request (HSR) dated February 21, 2018 requesting to see a doctor about his high blood

pressure care plan, stating that despite taking his medication as prescribed, he was continuously experiencing severe headaches and wanting to be considered being put back on a low sodium diet. (DPFOF 58.) Hentz responded to Northern's request that same day, telling Northern he was scheduled to see the nurse practitioner towards the later part of March (although Northern's appointment ultimately did not occur until late April). Hentz also ado advised Northern to submit a slip if he wanted a nursing visit sooner than his advanced care provider appointment. (DPFOF 60.)

Northern received Tylenol (325 mg) on January 11, which was refilled on January 18 2018. This would be a treatment for complaints of headaches. (Suppl. DPFOF ¶ 7.) Northern received Tylenol (325 mg) on February 22, 2018. (Suppl. DPFOF ¶ 8.)

Northern did not complain to Tidquist about ongoing severe headaches or ongoing severe chest pain before an April 26, 2018 appointment Tidquist had with him. (Suppl. DPFOF ¶ 9.)

Tidquist saw Northern on April 26, 2018. He complained of headaches and feeling fatigued but denied shortness of breath or chest pain. (Suppl. DPFOF ¶ 10.) On April 26, 2018, Tidquist started Northern on Metoprolol 25 mg twice a day to treat his hypertension, as well as his headache complaints. (Suppl. DPFOF ¶ 11.) Metoprolol is a beta blocker which affects the heart and circulation by improving the blood flow through arteries and veins. It improves the blood flow by relaxing the blood vessels and slowing the heart rate which relieves chest pain and workload of the heart. Metoprolol is used to treat chest pain and high blood pressure but it is also

prescribed to prevent headache prophylaxis and is used to treat anxiety. (Suppl. DPFOF ¶ 12.)

On May 10, 2018, Tidquist increased Northern's Metoprolol to 50 mg twice a day with the hope that it would improve his hypertension as well as his headaches. (Suppl. DPFOF ¶ 13.) On May 11, 2018, Northern was prescribed acetaminophen at 325 mg (noted as "APAP"). This would be a treatment for pain, including headaches or other body pain. (Suppl. DPFOF ¶ 14.)

Northern came under the care of Dr. Liu in May 2018 shortly after she began her employment. Based on the medical records, Dr. Liu prescribed ibuprofen, which would be a treatment for headaches, discomfort and muscle pain, to Northern on May 15, 2018 and increased the dosage of ibuprofen on May 29, 2018. (Suppl. DPFOF ¶ 15.) On May 15, 2018, Dr. Liu prescribed lisinopril, which is used to treat hypertension. She discontinued it on June 15, 2018 because of Northern's complaints of coughing, which is a possible side effect of the medication. (Suppl. DPFOF ¶ 16.)

On June 22, 2018, Dr. Liu prescribed Losartan, which is used to treat high blood pressure. (Ex. 500-092) By prescribing medication to bring blood pressure under better control, it is also anticipated that symptoms such as headaches or chest pain will be alleviated as well. (Suppl. DPFOF ¶ 17.) On June 22, Dr. Lius prescribed daily aspirin ("ASA") which may help alleviate pain and may also be appropriate to help prevent the risk of heart attack because at the time, tests were being scheduled which later confirmed that Northern did not suffer from a cardiac event. (Suppl. DPFOF ¶ 18.)

In July 2018, Dr. Liu prescribed Northern acetaminophen (noted as APAP) at 650 mg and renewed the prescription through September 15, 2018, indicating that he should thereafter use over the counter acetaminophen. (Suppl. DPFOF ¶ 19.) In July 20188, Dr. Liu also prescribed Northern aspirin (note as ASA) with refills through September 15, 2018 when she indicated he should use over the counter aspirin. (Suppl. DPFOF ¶ 20.)

The totality of care Northern received relating to his complaints of increasing severe headaches in 2018 satisfies the constitution. The defendants were not deliberately indifferent to Northern's symptoms when he reported them. Defendants also adjusted the approach they took to treat Northern and investigated further whether he had certain conditions that required other treatment, including sending him for offsite appointments. Defendants' actions satisfies the standard required by the Eighth Amendment.

Dated this 29th day of April 2022.

    Respectfully submitted,

    JOSHUA L. KAUL
    Attorney General of Wisconsin

    s/ Sarah A. Huck
    SARAH A. HUCK
    Assistant Attorney General
    State Bar #1036691

    Attorneys for Defendants
    Hentz, Kostohryz, Tidquist, Maassen

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-7971
(608) 294-2907 (Fax)
hucksa@doj.state.wi.us